The fourth district appellate court of the state of Illinois has now convened the honorable Peter C. Cavanaugh presiding. Good afternoon, gentlemen. We'll first call or we'll call case 4-18-0581, People of the State of Illinois Appellee v. David Carr Appellant. Counsel for the appellant, would you please state your name for the record? Michael Sklar, S-K-L-A-R, counsel for David Carter. Thank you. And counsel for the appellee, please state your full name for the record. Benjamin Sardinas for the state, your honor. Okay. Counsel Sklar, you may proceed. Thank you, your honor, and good afternoon. And may it please the court to all the judges. This case is on appeal for the decision of the circuit court of Livingston County after a third stage evidence hearing. In that hearing, the circuit court denied the successive petition seeking to reverse the conviction of David Carter and to remand the case for a new trial. On September 3, 1987, Superintendent Robert Taylor at Pontiac Prison in Pontiac, Illinois, was viciously attacked with a steel pipe and knife by Ike Easley and Roosevelt Lucas, inmates at Pontiac Prison. And Superintendent Taylor died shortly thereafter from those injuries. The only evidence suggested that Carter was guilty of involvement in organizing or executing that murder was a confession he made to Harry Martin, an IDOC undercover agent, approximately a month after the attack. In his petition, in his post-conviction petition, Carter claimed that he was forced by gang leader Corwin Brown at the Pontiac Prison to assume responsibility for organizing the attack in Brown's place. Brown, as second-in-command of the Black Gangster Disciple Street Gang at Pontiac, had the apparent authority and a deed which he exercised to cause violation, that is to say, physical injury and possible death on Pontiac inmates who disobeyed gang leadership orders and gang rules. The court below discredited all the evidence offered in affidavits and testimony of Carter and his witnesses at the third stage hearing, including Carter's claim that he was forced to make this confession to Harry Martin, the state's undercover agent. The manifest evidence... Mr. Szilard, let me ask you a question. You say that the court discredited. What role did credibility determinations play? I mean, was it appropriate for the court to make credibility determinations in this analysis? Yes, Justice. That's true. The court always has an ability to make credibility determinations when witnesses are giving oral testimony. The critical nature of the credibility rulings here is that the entire decision turned on the credibility rulings. And if the credibility rulings, particularly with respect to the confession given to Harry Martin, are seen in the proper light and don't hold up against the manifest weight of the evidence, the entire case goes the other way and Carter's petition should be granted. That's our point with respect to credibility. And so with the standard of review here, we're looking at manifest error, correct? We're looking at whether or not the credibility rulings are against the manifest weight of the evidence. If you want to conflate or put together a manifest correctness of the ruling, you could say so, but it really depends upon the credibility rulings and how those stack up against the evidence. I hope I've addressed your concern and question. Yes, you have. Thank you. Okay. So let's proceed. The point is from all the evidence that was entered by the defendants' witnesses and by the state's witnesses at the trial particularly, it's clear that Pontiac prison was a dystopian world where inmate behavior was controlled by violence and threats of violence, including death for failing to follow the orders of gang leaders. Reason, right or wrong, common sense had no place in this world, in this crazy world. At Pontiac prison in 1987 when the crime occurred, follow the leader literally was a game of do it or die. So let's look at the manifest evidence and see what it shows. The evidence begins almost immediately after the attack when state department of corrections undertook an investigation of the facts. The evidence continues to develop chronologically over a period of almost three decades and continues right up into and through the third of 2018. On September 3, 1987, within hours of the attack, eyewitnesses, Demetre Brown and Lawrence Spiller who were both gang members and inmates, told the IDOC investigators that in the minutes before the attack, they observed Corwin Brown, the second in command of the gang at Pontiac, nodding and pointing toward the office on 5 gallery of the prison where Superintendent Taylor's office was, indicating that Easley and Lucas should commence their attack that had been planned. Secondly, Corwin's confession to Martin, to Harry Martin, a month later, contains invented facts that are inconsistent with the state's own evidence at the 1991 trial four years later. For example, Carter stated in his statement to Harry Martin that he arranged for loud radio music to be played on 5 gallery where the office was located. And also that he stationed guards at the far end of the gallery to prevent people from coming aboard during the attack. In fact, Captain Donnie Whitaker, for the state, at the 1991 trial, testified that about 10 to 15 minutes before the attack, he came in to visit Taylor in his office. And after he left and walked out on to the gallery, it was inordinately quiet and strange. And he was quite concerned about this and wanted to talk to Taylor about it. But before he could, the attack occurred and he was thrown into, the entire prison was thrown into confusion by virtue of the attack and Taylor's death. So, at the trial in 1991, additional witnesses came forward and even those for the state that supported Carter's claims in his petition. For example, Harry Martin described the hierarchy of the Black Gangster Disciple Gang with a board of directors that meets at Stateville and to whom individual prison leaders like Corwin Brown are subordinated. And they also, Harry Martin also testified to the use of violence to control inmate members and furnish rule breakers, punish rule breakers and those that don't follow orders. Demetre Brown and Lawrence Spiller, two inmates who spoke to the IDOC investigators, described in detail, and this is at the 91 trial, described in detail the events surrounding the attack, including where they were standing and sitting. In fact, Spiller was sitting in Taylor's office across the desk, which he described in his testimony at the 1991 trial. They also described what Easley and Lucas were wearing before the attack and then what they did with their clothing after the attack. But, across examination by Carter's counsel, Spiller couldn't, quote, recall, can't recall, close quote, and Demetre Brown, quote, didn't remember, close quote, telling the IDOC investigators they saw Corwin Brown signal to Easley and Lucas to commence the attack. Douglas Reed, who was the author of the investigative report and who led it personally, was a witness at the 1991 trial also. And for the state, but on cross-examination, he confirmed that the investigation report which he prepared accurately stated and described what Spiller and Demetre Brown's statements were to investigators. Official evidence. In 1996, Corwin Brown delivered a rambling handwritten affidavit in which he cleared Carter of participation in or organizing the attack. He stated his motivation was to clear his conscience because he had received information that he had an illness which threatened his life and he wanted to be sure that he took care of David Carter and did his best to see that Carter didn't spend the rest of his life in prison. At the 2018 third stage hearing, Brown admitted that much of his 2000, I'm sorry, much of his 1996 affidavit was filled with lies. But he left the clearance of Carter intact. Brown's, Corwin Brown's 2014 affidavits at his hearing testimony in 2018 cleared Carter again. Consistent with his 1996 affidavit and which he also accepted responsibility for organizing the attack. That is to say at the 2018 hearing. And he also described the intimidation and control of inmates which he exercised as second in command of the prison gang. Easley and Lucas also prepared affidavits which are attached to the petition and gave testimony at the third stage hearing in 2018. They corroborated Brown's affidavits and testimony with respect to orchestration of who orchestrated the attack. That is to say, Corwin Brown. And they vividly described the gang's control of the prison inmate population through intimidation, threats, and real physical violence and death. Counsel, let me ask you a question. We're familiar with the record here of who testified to what and the other things that happened that you're reviewing. The trial court conducted a lengthy hearing in this case, did it not? Yes, there was. And heard from all the witnesses who you chose to call and also had an opportunity to consider the prior record, did it not? Yes, Justice, they did. Now, you're talking to a panel of appellate judges who in our prior incarnations were trial judges and we have a total probably close to 30 years or maybe even more trial experience. And we know firsthand how much better is the view of the trial court to assess credibility and to determine whom it believes and what it believes than this court, this court's opportunity from the cold record. So I suppose my question is, I understand that there are disputes, I understand that there's difficulty in some of the evidence, but why shouldn't we simply defer to the trial court, who not only heard it all, but made a careful written assessment of whom she believed and why she believed them? Well, Justice, I would say that we acknowledge that in our brief, that the presumption always is that the trial judge, because they could observe the behavior and the witnesses are in the best position to make credibility decisions. But that doesn't mean that the court should suspend its own, this court should suspend its own ability to analyze the record. The case that comes to mind or which we cited extensively in our brief was People versus Coleman, where the appellate court reversed credibility decisions and took as evidence of the most important facts that happened. Testimony from perpetrators in the crime who hadn't been heard from before, and who, even though they differed on small facts, and in fact, there was some evidence they were intoxicated, the court said they were so consistent on the basic important facts that the court chose to believe these four perpetrators over the several witnesses at a trial and at the hearing who testified that the defendant was guilty. Well, in all these cases, sui generis, that is fact intensive. The particular facts in Coleman and the other cases you cite, those are the facts that were before those courts and that led the courts to review to reach the conclusion they did. Here we have different factual context plus in none of those cases, if I remember correctly, did the court of review have what we have in this case, a detailed, carefully written explanation by the trial court, what was it, 17 pages worth, of whom she believes and what she believes. And that in a different factual context, appellate courts found the record wanting. How does that support your argument that we should find the record wanting here? Well, the record is more than just the testimony at the third stage hearing. The record in this case consists of the entire record on appeal, and that record has many factors in it that were not considered, in fact, were ignored, if you will, by the court at the third stage hearing. For example, the report itself by the IDOC investigation, in which two eyewitnesses, two eyewitnesses, in the heat of the moment, in the heat of the moment, described Corwin Brown and what his behavior was outside Taylor's office immediately before the attack. There is the legislative hearings in 1996 that reviewed gang participation in the prisons of Illinois, and particularly focused on Pontiac. In fact, one of your court's members, John Turner, was a member of the legislature at that time and sat on the panel of the hearing and heard the witnesses. So the fact that there was gang control through intimidation, vicious beatings, and death is spread all over this entire record, and yet the court below in the third stage hearing, in her opinion, essentially ignored it, saying, well, I don't know whether it was or wasn't important, but I think everybody was involved in a conspiracy, so I'm going to go with that. And that, we find, is against the manifest weight of the evidence. There are other factors from the record on appeal that suggest the court below's credibility findings shouldn't stand. Mr. Sklar, can we just, with time, the time remaining, I'd like to just drill down and get to the issue. The court, in its detailed order, found newly discovered evidence, so we need to look and see if that evidence would likely change the result. And we look at the testimony at the third stage hearing, and we have Brown, whose testimony the court found evasive. Easily, the court found potentially just making things up as he went along. Lucas, mumbling the words, not making a lot of sense. Defendant, argumentative, downplaying violent acts, those types of things. Can you address those and tell us why it is, in light of all those findings of the court, we would reject the court's findings and overturn the court's findings? Well, I attended the third stage hearing. I wasn't counsel at the time, but I did attend it. And I thought the witnesses spoke clearly and directly and addressed the issues that were presented to them and answered questions clearly. Were they defensive? Well, perhaps. I suppose my question is, in light of the standard and looking at the trial fact, I guess I'll say, written ruling, that's what we're testing. What is it about the court's findings that would allow us, in light of the standard, to reject those of the evidence that are throughout the record? And what I would say to you, Your Honor, in the time that I have remaining, and I don't know how much time it is, probably is very little, but I would say to you that there are really three tests that a court of review of a third stage hearing should take into consideration. And these are announced at the Coleman case. The first is, of course, that the evidence presented has to be new, material, and non-tribulative. And the court below did find that to be true. The next test is whether or not those facts undermine the reliability of the factual basis of the conviction below. And we argue that that is correct. I think the facts of the entire record that we discussed in our briefs do undermine the conviction previously entered. And the third test, if you will, is what is the probability that a new set of eyes and ears at a new trial would come to a different result? Not a certainty, but a probability that they would. And we would say to the court this morning that we think that's pretty high given the facts and the burden of truth being shifted to the state. Thank you, counsel. That's the remainder of your time. We'll hear from you on rebuttal. Mr. Sardinic. Good afternoon, your honors. May it please the court. I'd like to begin with the question that Justice Holder-White asked, which was about the standard of view, because that's the most important thing that any reviewing court when reviewing a case has to think and view the lens through. And the answer to her question is that the standard is manifestly erroneous. What is manifestly erroneous? It is something that's clearly evident, plain, and indisputable. And what we have in this case is something that can be summed up in one word, and that's consistency, an issue of consistency. Whose account makes sense? On the one hand, we have the state's case, which is a consistent narrative laid out by both defendants' own about the situation that was going on at Pontiac Correctional Facility and the fact that the Black gangster disciples were going to retaliate over the death of one of their members. During this conversation, defendant presents a clear understanding of what the conspiracy was. He was ordered by a higher-up to organize the murder of Captain Whitaker, which then resulted in the death of Superintendent Taylor because he entered the office during the time that the murder was occurring. And what we have is defendant explaining in great detail the plan, which was that Easley and Lucas were ordered to go into the room to hit Captain Whitaker with pipes, that they were to wipe their weapons down, that they were to come with masks and gloves, that he was able to perfectly recount exactly the order in which people came in and out of cell 552, which intimated that he was able to view the attack itself. We have all of that testimony in the trial record, and defendant was convicted on that record. Now, on the other hand, we have the accounts of the four affidavit witnesses and what they stated at the evidentiary hearing. And what I see throughout that account is inconsistency. I see disagreements about when the murder was planned, who was supposed to, how the murder was supposed to be committed, whether or not, who was forced to take blame for the murder, when they were told they were supposed to take blame for the murder, whether or not there was a knife at the time of the murder that was taken away from one of the perpetrators of the murder. All throughout the affidavits and the testimony that's given at the hearing, we see inconsistency. And while defendant may disagree with the trial court's decision to find major inconsistencies about a conspiracy, they may disagree that the with the basic accounting from all the witnesses about what the conspiracy was, this new version of the conspiracy. That doesn't make the court's decision clearly, evidently, plainly, indisputably incorrect. And as Justice Steigman already noted, and as all of the panels aware who have been trial court judges, reading a cold record is completely different from hearing a witness in front of you. It gives statements, give intimations, the tone, the nature of what they're saying is just as important as the words that come out of their mouth. And the fact remains that nothing in this record, which is full of disagreement amongst the witnesses, would lead anyone to conclude, a reasonable jury to conclude that this person does not deserve to be convicted. And based on that, the standard that we have before us, nothing would result in a reversal. So I think based on all of that, that's a plain discussion of what the standard review is for the case before the court, and what we have to evaluate when it comes to evidence. And I find it interesting that defendants spent most of the oral argument discussing the trial record here, because the issue here with the trial court's decision is plainly whether or not it believed these affidavit witnesses about their account of what the version of evidence would have been put before a new jury sitting. The trial court is trying to evaluate whether or not there would have been a defendant spent most of his time discussing the trial record. And what I think is important to understand is that when we go through the evidence, all of these people disagree with each other about fundamental elements of the conspiracy as they asserted it during in their affidavits and in the evidentiary hearing. If we start with Corwin Brown, Brown's specific account of the conspiracy is that he met with Easley and Lucas the day before the murder, and ordered them to take care of business and beat Whitaker with a pipe. But in the sixth paragraph of his affidavit, he claims he spoke with Easley and Lucas days in advance of the attack and then gave them the nod to proceed to attack an office occupant, which happened to be Taylor. But then during his testimony, he says that the hit was specifically for Captain Whitaker and persistently denied knowing that Taylor was in the office. Brown, in his affidavit, doesn't say that he ordered them to use metal pipes, but during his testimony, he specifically says that he ordered them to use metal pipes when committing the attack. As to the responsibility, which is the whole element of this case in terms of whether or not defendant was the one that organized it or not, in the fifth paragraph of his affidavit, Brown claims that he directed Michael Johnson and defendant to accept responsibility. But during the hearing, he testified that he only told Johnson to accept responsibility and the defendant was supposed to support Johnson's story. So the person who was supposed to have forced defendant to take blame for this has multiple accounts of how this was supposed to have been given and who was supposed to take responsibility for the murder in the first place. If we look at Easley and Lucas's testimony, there's also inconsistencies. Easley stated that Brown approached them about attacking Whitaker on September 2nd. Lucas said it happened the morning of the murder and claimed that he had never discussed or even knew about the fact that the Black gangster disciples wanted to commit a murder that day. In 1987, Easley told Martin that he and Lucas were instructed by defendant to hit Taylor with pipes, but now he said that Brown instructed him to kill Whitaker and mentioned an additional person who needed to be attacked at Shettlesworth, which neither Brown nor Lucas ever said anything about being in the original plan. As to the responsibility, Easley stated in his affidavit that Brown directed Easley to tell Martin that defendant ordered the attack about a month after the murder occurred, but Brown testified that he told Johnson to take responsibility for the murder and for defendant to back up the story, never saying anything about Brown telling Easley to blame defendant. And when it comes to defendant's own testimony, defendant contradicted every single witness and all of the evidence that was before the trial court at the trial because he said that there was no knowledge around the prison that there was going to be a retaliation for the death of one of the members, which is ridiculous considering the bevy of evidence that this was well known and well planned in advance even under Brown's theory because this was a decision by the hierarchy about having to retaliate against the prison establishment for the killing of one of the members. And defendant's own account of how he was told he needed to take responsibility was that he received a kite, which is a note, about three hours after that, which contradicts Brown's testimony in his affidavit. So I've now just gone through the entirety of the evidence that was presented at the evidentiary hearing for the trial court, and I think even if the standard of review wasn't so tilted towards the trial court's evaluation of this issue, it seems clear that there's no coherent narrative about how this murder, how this alleged conspiracy came about, how it was told, how it was organized, and that just clearly does not meet the standard that's set forth in Coleman and Molstad and Ortiz in the cases that the Supreme Court has dealt with where they have reversed trial trials as a result of newly discovered evidence. In Coleman, as we include in the brief, I won't go into like too long detail about the facts, but there were multiple important details in the affidavits that made it clear that this wasn't just a fabricated story made up years after the murder. There were details about who was specifically ordered to lie on the floor, how many people were jumping out of windows, whether there was consistency about who was involved in the attack, which was an issue in that case. Here we just have a mishmash of different accounts about, which all say different things about how this murder was organized, how it was done, and how this alleged order to take responsibility was given to the defendant. And that's just simply not a sufficient amount of, a sufficient consistency, the evidence is not such a consistency to call into the trial's verdict into question based on the record that we have here. So if your honors have no further questions, I would just simply ask that we affirm the dismissal at the third stage evidentiary hearing of defendant's successive petition. Thank you, Mr. Sardinius. Rebuttal argument, Mr. Sklar? Yes, I would like to take my five minutes for rebuttal. Oh, please. So as far as consistency goes, the consistency is on the main facts here. The main facts being that throughout this, the evidence is that from all the witnesses, the coroner didn't do it. Coroner didn't organize it. Coroner didn't participate in the murder. So that's the main consistency. It's agreed that Orvin Brown is a prevaricator, and he has previously been a very difficult witness. He admitted himself that he lied. But I think what happened is that the court took their view of coroner, and he colored the court's thinking about the other witnesses, who are by and large consistent. Yes, they did differ about a few minor issues. But in fact, if you take a look at Peeble versus Coleman, this is a different Coleman case. It's 301 Illinois App 3rd, 37 at page 53. It's cited in our reply brief. So it's available to you. It says basically that where discrepancies in testimony of a witness relate only to the evidence, they need not render the testimony or material testimony improbable or incredible. So it's possible this court can take a look at the differences and say, yes, there were differences between the witnesses and their affidavits and their testimony. Did I learn about this today? Did I learn about it the day before? Did I learn about it at four o'clock in the afternoon? Yes, this happened. These events happened three decades ago, Your Honor. And by the time of the hearing in 2018, it was almost 30 years. And these guys have been in different prisons and separate from each other. It's entirely possible that their memories were weak. But on the basic facts of the case that are in the record, they are consistent. Even Corwin Brown is consistent on David Carter's innocence. And they're all consistent on the question of what the pressures were like in the prison for the gang threats. So I would argue to Your Honor that what the state has said has some merit, just as the state agreed that we factually presented the evidence from Corwin Brown in our briefs and recognize that those were facts. You have to sit back and say, you are not oblivious to evaluating what appears from the entire record and from what happened 30 years ago. It's there. The court below did not do that. Your Honors, in this court, have an opportunity to correct that and to say that Carter, that a new trial has a probability, not an uncertainty, but a probability of reaching a different result when the burden of proof is shifted to the state in light of all the evidence that exists in the record and which would be admitted. Thank you, Your Honor. Thank you both. Thank you both. Counsel, the court will take the matter under advisement and the court will at this time stand in recess.